UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN MELNIK, | Case No. 2:17-CV-2378 JCM (EJY) |
| Plaintiff(s), | ORDER |
| v. | |
| ROMEO ARANAS, | |
| Defendant(s). | |

Presently before the court is defendant Dr. Romeo Aranas's ("Dr. Aranas") motion for summary judgment. (ECF No. 19). Plaintiff John Melnik filed a response (ECF No. 22), to which Dr. Aranas replied (ECF No. 23).

Also before the court is Dr. Aranas's motion for leave to file exhibits under seal. (ECF No. 20).

**I.  Background**

This is a civil rights action brought pursuant 42 U.S.C. § 1983 that arises from the alleged delay in treatment of Melnik's Hepatitis C virus (HCV) infection. (ECF No. 1). The parties have consented to the following statement of undisputed facts[1]:

*a. Melnik's treatment history*

Melnik is an inmate incarcerated in the Nevada Department of Corrections ("NDOC"). (ECF No. 19). Melnik alleges that he was diagnosed with HCV in 2006. *Id.* In October 2014, the Food and Drug Administration approved the use of Harvoni, the first ever direct acting

---

[1] In Melnik's response, he "references and incorporates herein the background and factual history of this case as set forth in Defendant Aranas's MSJ." (ECF No. 22 at 1). The court has limited its recounting of the parties' statement of undisputed facts to reflect only that which is relevant to resolution of the instant motions.

**James C. Mahan**
**U.S. District Judge**

antiviral released in the United States for treatment of HCV that does not require concomitant treatment with interferon. *Id.* On November 4, 2014, Melnik submitted a medical request to prison officials regarding HCV treatment for the first time. *Id.* On November 12, 2014, Melnik was seen and lab studies were ordered. *Id.* Lab studies revealed an Aspartate Aminotransferase Platelet Ratio Index (APRI)[2] score of 1.24. *Id.*

On June 8, 2015, Melnik met with Dr. Koehn, who ordered an HCV genotype test, which confirmed Melnik's HCV infection. *Id.* Melnik was enrolled in the chronic disease clinic for HCV infection. *Id.* On June 24, 2015, Melnik's APRI score was 1.336. *Id.*

On July 26, 2015, Melnik submitted a medical request for Harvoni treatment. *Id.* In September 2015, Melnik's APRI score improved slightly to 1.44, based on lab studies taken in September and an estimate of his platelet count. *Id.* However, in November 2015, Melnik's APRI score rose to 1.97. *Id.*

On November 24, 2015, Dr. Koehn ordered that Melnik be referred to the Hepatitis C committee ("HCV committee") to be approved for treatment. *Id.* On March 30, 2016, Melnik's APRI score was 2.068. *Id.* On August 3, 2016, Melnik submitted a medical request stating that his APRI score was 2.074 and that he was eligible for HCV treatment. *Id.* Gloria Carpenter, Director of Nursing Services, responded to his request, stating that he was still on the list to be seen. *Id.* In September 2016, Melnik's APRI score fell to 1.68. *Id.*

On November 28, 2016, Melnik submitted a medical request stating that his liver felt like it was swollen. *Id.* A provider ordered liver function tests and an ultrasound. *Id.* Dr. Hellerstein opined that Melnik's APRI score likely remained less than 2.00, based on the liver function test results in November and his platelet count taken several months later. *Id.* On December 15, 2016, an ultrasound of the abdomen was performed on Melnik. *Id.* Dr. Leckie, who performed the examination, found an enlarged liver and spleen, the latter "possibly from mild elevation of the portal venous pressure secondary to cirrhosis." *Id.*

On January 2, 2017, Melnik submitted a medical request asking if he has been approved for HCV treatment. *Id.* A registered nurse responded that the HCV committee had not been

---

[2] The APRI index is used to assess and predict HCV progression. (ECF No. 19).

formed and that she would inform Melnik when she received more information. *Id*. On February 9, 2017, Melnik submitted another medical request asking if he has been approved for Harvoni treatment. *Id*. A registered nurse responded that the HCV committee was emailed to check on the status of his request for treatment. *Id*.

On March 9, 2017, Melnik's APRI score was 2.09. *Id*. On April 11, 2017, Melnik was seen at the chronic disease clinic and HCV lab studies were completed. *Id*. On that same day, an HCV patient data form was submitted to the HCV committee for review, which was approved on May 9, 2017. *Id*.

On June 21, 2017, Melnik was seen for initial HCV treatment. *Id*. Melnik received Harvoni once daily for twelve weeks. *Id*. As of August 2017, Melnik's liver functions were normal and his APRI was down to 0.49. *Id*. On September 28, 2017, Melnik's HCV treatment was completed. *Id*. As of March 2018, Melnik's HCV was undetectable, his liver function tests remained normal, and his APRI score was 0.38. *Id*.

*b. NDOC's HCV treatment policy*

Consistent with the standard of practice at the time, NDOC policy on HCV treatment has been to prioritize treatment for patients whose lab tests suggest a high likelihood of developing serious liver damage. *Id*. NDOC mainly used the APRI score, a measure based on blood tests, to monitor HCV patients. *Id*. An APRI score is not alone sufficient to diagnose serious liver damage. *Id*. Rather, an APRI score is used to identify when disease progression to permanent liver damage is likely. *Id*.

NDOC required that any patient whose APRI score exceed 2.00 be approved for treatment, with treatment also being available for a lower threshold of 1.50 if other evidence of advanced fibrosis or cirrhosis was present. *Id*. The Federal Bureau of Prisons and several other state correctional systems at that time were using similar measures to prioritize treatment. *Id*. In fact, the Federal Bureau of Prisons still uses an APRI score of 2.00 to monitor progression of HCV infection. *Id*.

. . .

. . .

*c. Dr. Aranas's involvement*

In March 2016, Melnik filed a grievance regarding a lack of treatment for his HCV. (ECF No. 21-6). Following some movement through that process, he ultimately filed a second level grievance that was assigned to Dr. Aranas. *Id*. Dr. Aranas upheld the grievance on September 7, 2016. *Id*.

Dr. Aranas became a member of the HCV committee in April 2016. (ECF No. 21-3 at 7). As chairman, he ultimately approved Melnik for HCV treatment on May 9, 2017. *Id*. The parties dispute whether and when Dr. Aranas became aware of Melnik's prior requests for treatment or his multiple APRI scores above 2.00. (*See* ECF Nos. 19, 22).

*d. Procedural history*

On July 2, 2018, Melnik filed a complaint against Dr. Aranas alleging a single cause of action for "deliberate indifference of a serious medical need in violation of the Eighth Amendment of the United States Constitution." (ECF No. 4). Melnik's claim, brought pursuant to § 1983, is against Dr. Aranas in his individual capacity only.

Now, Dr. Aranas moves for summary judgment on Melnik's single cause of action. (ECF No. 19). Dr. Aranas also moves for leave to file certain exhibits to his summary judgment motion under seal. (ECF No. 20).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. Where the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

  *a. Motion for summary judgment*

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

As an initial matter, the second element has been satisfied as Dr. Aranas does not dispute that the alleged actions were committed under color of law. (*See* ECF No. 19). Thus, the focus of the court's analysis turns to the first element—whether the right Melnik alleges that Dr. Aranas violated is a right secured by the Constitution or laws of the United States.

When a plaintiff asserts a § 1983 cause of action against a government official in his or her individual capacity, the government official may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005). Here, Dr. Aranas has asserted this defense. (ECF Nos. 12).

Qualified immunity insulates public officials "'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court must consider whether the defendant's actions violated a constitutional right. *Conn v.*

*City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court must determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the plaintiff's burden to show that the constitutional right was clearly established. *Sorrels*, 290 F.3d at 969.

The Supreme Court has instructed that district judges may use their discretion in deciding which qualified immunity prong to address first based on the circumstances of the case at issue. *See Pearson*, 555 U.S. at 236. Accordingly, the court will first address the second prong of the qualified immunity test to determine whether Dr. Aranas's actions violated a clearly established right.

The "clearly established" prong of the qualified immunity analysis involves the issue of "fair warning"—specifically, whether prior decisions gave reasonable warning that the conduct at issue violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Thus, the dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

In *Ashcroft v. al-Kidd*, the Supreme Court emphasized that lower courts should not define "clearly established" law at a high level of generality. 563 U.S. 731, 742 (2011). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment

is of little help in determining whether the violative nature of the particular conduct is clearly established." *Id.*

Before a court can impose liability on a government employee, it "must identify precedent" as of the date of the alleged constitutional deprivation "that would put [the government employee] on clear notice" that the conduct in question under the "particular circumstances" would violate the constitution. *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017); *see also White v. Pauly*, — U.S. —, 137 S. Ct. 548, 551 (2017) (per curiam) (holding that the clearly established law analysis "must be 'particularized' to the facts of the case"). While the Ninth Circuit does "not require a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Mattos*, 661 F.3d 433, 442 (9th Cir. 2011) (internal quotation marks and citation omitted).

Melnik contends that "[a]t the time of the events giving rise to this case, it was clearly established federal law, which a reasonable official would have known, that deliberate indifference to a prisoner's serious medical need violates the constitution." (ECF No. 22). Melnik provides no additional argument and cites no authority to further support the proposition that his Eighth Amendment right to prison medical treatment was "clearly established" at the relevant time.

Melnik has thus failed to identify any existing precedent sufficient to place the constitutional question "beyond debate." *See Mattos*, 661 F.3d at 442. Given the particularized medical condition and treatment history presented here, Melnik must allege more than violation of an "extremely abstract right[]" to establish that Dr. Aranas had fair warning his conduct violated a constitutional right. *See White v. Pauly*, 137 S. Ct. at 552.

Accordingly, Melnik has not met his burden to show that his Eighth Amendment right to prison medical treatment was "clearly established" at the relevant time. Dr. Aranas is therefore entitled to qualified immunity on Melnik's single cause of action, and as such, the court will grant Dr. Aranas's motion for summary judgment.

. . .

. . .

James C. Mahan
U.S. District Judge

- 8 -

*b. Motion to seal*

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A party seeking to seal a judicial record must comply with the Ninth Circuit's directives set forth in *Kamakana v. City and County of Honolulu*:

> Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. ... A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. ... that is, the party must "articulate[ ] compelling reasons supported by specific factual findings," that outweigh the general history of access and the public policies favoring disclosure ....
>
> In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. ... The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.

447 F.3d 1172, 1178–79 (9th Cir. 2006) (citations omitted). If the court decides to seal judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179.

Here, Dr. Aranas's motion to seal states, in its entirety, "Defendant Aranas, by and through counsel, Aaron D. Ford, Nevada Attorney General, and Henry H. Kim, Deputy Attorney General, hereby request leave to file certain exhibits in Defendant's Motion for Summary Judgment under seal." (ECF No. 20).

Because Dr. Aranas has provided no argument to support his motion to seal, the court finds that Dr. Aranas has not presented compelling reasons to seal the exhibits to his motion for summary judgment.[3] *See Kamakana*, 447 F.3d at 1179. Accordingly, the court will deny Dr. Aranas's motion to seal.

---

[3] One might be tempted to argue that at least some of the records Dr. Aranas seeks to seal fall within the ambit of "traditionally kept secret" under *Kamakana*. Case law in this circuit has identified only "two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *See Kamakana*, 447 F.3d at 1178; *see also Gary v. Unum Life Ins. Co. of America*, No. 3:17-cv-01414-HZ, 2018 WL 1811470, at *2 (D. Or. Apr. 17, 2018). None of the records Dr. Aranas seeks to seal fall within those categories.

James C. Mahan
U.S. District Judge

- 9 -

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Dr. Aranas's motion for summary judgment (ECF No. 19) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Dr. Aranas's motion for leave to file exhibits under seal (ECF No. 20) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 28, 2020.

_____
UNITED STATES DISTRICT JUDGE